UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ARVAL SERVICE LEASE S.A. and
ELEMENT FINANCIAL CORPORATION,

Plaintiffs,

v.

J. CHRISTOPHER CLIFTON, individually,
BONNIE CLIFTON, individually, and
ELEMENT ARVAL LLC, a Florida Limited
Liability Company,

Defendants.

Civil Action No. 3:14-cv-1047-BJD-MCR

**PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER AND TO QUASH NOTICES
OF DEPOSITIONS SET FOR JUNE 29 AND 30, 2015**

Plaintiffs Arval Service Lease S.A. ("Arval") and Element Financial Corporation ("Element") (collectively the "Plaintiffs"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 26(c) and Local Rule 3.04, hereby move for a protective order and to quash notices of deposition issued by Defendants J. Christopher Clifton, Bonnie Clifton, and Element Arval LLC pursuant to Federal Rule of Civil Procedure 30(b)(6). In support of this motion, Plaintiffs submit and incorporate the memorandum of law set forth below.

**MEMORANDUM OF LAW**

This motion arises from Defendants' unilateral issuance of two (2) deposition notices to ostensibly take the depositions of Plaintiffs' corporate representatives. The deposition notices were issued two days ago, and seek to command high-level executives of the Plaintiffs, located in France and Canada, to travel to the United States for depositions on June 29th and 30th. While this might not seem a problem in at first blush, Defendants' bait-and-switch respect to these depositions underscores the prejudice to Plaintiffs. About ten days ago, counsel for both sides reached an understanding that Defendants would take the depositions of Plaintiffs' corporate representatives via videoconference, in order to avoid the cost and inconvenience associated with international travel. Now—a mere two weeks before the close of discovery—Defendants have deliberately noticed the depositions of these individuals in the United States on dates when the Defendants knew the deponents were unavailable.

This action by Defendants is the most recent in a string of litigation tactics designed to harass Plaintiffs, and needlessly prolong this litigation. Indeed, on several prior occasions Plaintiffs believed they had reached agreements with Defendants on various issues only to have Defendants renege on such agreements at the last minute. Just as in those situations, there was no warning or reasonable explanation for Defendants' change of heart, and Defendants' refusal to take the depositions of Plaintiffs' corporate designees by videoconference at this point, after the parties had contemplated doing so for the last two weeks, is no more than a litigation tactic.

Plaintiffs therefore request that the Court enter an order quashing the present deposition notices, and compelling Defendants to take the noticed depositions via videoconference on dates when the corporate representatives are available.

**I.     BACKGROUND**

This is a cybersquatting case in which Element and Arval allege that Defendants registered internet domain names containing Element's and Arval's trade names (for example, www.element-arval.com) for the bad-faith purpose of denying Plaintiffs access to those domains and, ultimately, extorting a settlement from Plaintiffs in exchange for release of the domain names. This Court has previously held that Element and Arval are likely to prevail on the merits of their cybersquatting claims, that Defendants acted in bad faith in registering and attempting to profit from the infringing domains, and has entered a preliminary injunction barring Defendants from *inter alia* using or selling the domain names during the pendency of this suit. *See* Order Granting Preliminary Injunction (Doc. 51) at 44-47.

Defendants are now attempting to game the discovery process in order to inconvenience and harass high-level Arval and Element officers, in hopes that the threat of inconvenience will force an unearned monetary settlement. Defendants' bad faith is evidenced particularly by the manner in which they have served the Rule 30(b)(6) deposition notices at issue here. On May 28, 2015, Defendants served requests for production of documents on Element and Arval. *See* Defendants' Requests for Production, attached as Exhibit A. Responses to those requests are due July 2, 2015—<u>after</u> the close of discovery on June 30, 2015. Notwithstanding the untimely service of these requests, Plaintiffs have never

indicated to Defendants that they would refuse to answer their written discovery and are, in fact, working diligently to provide responses prior to the close of discovery.

Defendants' counsel first raised the issue of Rule 30(b)(6) depositions on June 1, 2015, via telephone with Plaintiffs' counsel. Plaintiffs' counsel informed Defendants' counsel that Philippe Noubel and Jim Nikopoulos would testify on behalf of Arval and Element, respectively, and that Plaintiffs would produce those individuals, provided that Defendants would accommodate concerns regarding scheduling and location.

Mr. Noubel is the Deputy CEO for Arval and is based in Paris, France. *See* Declaration of Philippe Noubel (Doc. 10-2) ¶¶ 3, 5. Mr. Nikopoulos is the Vice President and General Counsel for Element and is based in Toronto, Canada. *See* Declaration of Jim Nikopoulos (Doc. 10-1) ¶¶ 3, 6. Because Messrs. Noubel and Nikopoulos both reside abroad and are high-ranking corporate officers with demanding schedules, Plaintiffs requested that the depositions be conducted via videoconference to avoid cost and time of international travel for the deponents. Plaintiffs' counsel even offered to provide high-definition videoconferencing services at their offices in Florida, Toronto, and France <u>at their own cost</u>, so that Defendants' counsel could easily take the depositions from his home base of Florida.

On June 1, 2015, Defendants indicated via telephone that they were amenable to conducting the depositions via videoconference. On June 3, 2015, Plaintiffs' counsel sent an email to Defense Counsel confirming that Plaintiffs "can offer the Arval 30(b)(6) on June

25th and the Element 30(b)(6) on June 30th—***both by video as we discussed***."[1] *See* Email from William Bartow to Mark Warzecha (June 3, 2015), attached as Exhibit B.

Defendants did not respond to Plaintiffs' email for nearly a week and raised no objection to the previously discussed video depositions until June 9, 2015. Presumably after realizing that they would not receive responses to their requests for production of documents prior to the deposition dates, Defendants unilaterally served Rule 30(b)(6) notices for Element and Arval for depositions to take place in Melbourne, Florida. Defendants issued these deposition notices without consulting Plaintiffs' counsel, and in direct contradiction to the understanding reached on videoconferencing. *See* Rule 30(b)(6) Notice for Element, attached as Exhibit C; Rule 30(b)(6) Notice for Arval, attached as Exhibit D. Mr. Noubel's deposition (on behalf of Arval) was set for June 29, 2015 in the deposition notice—a date on which Defendants knew Mr. Noubel was not available, even to be deposed via videoconference from Paris. Mr. Nikopoulos' deposition (on behalf of Element) was set for June 30, 2015, a date that Defendants knew Mr. Nikopoulos was unable to travel to Florida (and one day after the Canadian National Holiday, Canada Day). Defendants immediately offered to extend the discovery period to resolve the availability issues, thereby ensuring that they receive responses to their document requests prior to the rescheduled depositions. Defendants' actions are transparent – they are trying to manipulate the discovery process so that they have Plaintiffs' responses to their document requests in time to use the documents

---

[1] That Messrs. Noubel and Nikopoulos are available for video deposition on these dates does not mean that they are also available to travel from Paris and Toronto, respectively, to be available in Melbourne, Florida on these days.

with the respective corporate designees. Defendants' issued their discovery requests too late, however, and the Court should not permit this type of discovery gamesmanship.[2]

Plaintiffs therefore request that the Court quash the deposition notices and enter an order compelling Defendants to take the noticed depositions via videoconference on dates when the corporate representatives are available, namely, June 25th and June 30th.

## II. ARGUMENT

Federal Rule of Civil Procedure 26(c) and Local Rule 3.04 allow the Court to enter a protective order "specifying terms, including time and place, for the disclosure or discovery" to occur. FED. R. CIV. P. 26(c)(1)(B). Those Rules allow the Court to limit discovery or to specify the location where a deposition will be taken when necessary to prevent harassment to a party or the deponent.

Exercise of that authority is particularly appropriate when the deponent resides abroad. As one court has explained, ***"as a general rule '[i]n the absence of exceptional or unusual circumstances, when a deponent resides at a substantial distance from the deposing party's residence, the deposing party should be required to take the deposition at a location in the vicinity in which the deponent resides, even if the deponent is a party.'"*** *Partecipazioni Bulgari SpA v. Meige*, No. 86-2516, 1988 WL 113346, at *3 (S.D. Fla. May 23, 1988) (quoting *Gen. Leasing Co. v. Lawrence Photo-Graphic Supply, Inc.*, 84 F.R.D.

---

[2] Even just today, Defendants served "Supplemental" Requests for Productions of Documents and Interrogatories to both Element and Arval. With discovery set to end in less than 30 days, it is clear that Defendants believe their discovery gambit will pay off, that discovery will be extended by the Court, and that Plaintiffs' will nonetheless be forced to answer these late discovery requests. The Court should not endorse such blatant attempts by the Defendants to control the discovery process for their benefit alone, and to the ultimate prejudice of Plaintiffs.

130, 131 (W.D. Mo. 1979)).  With regard to corporations, "[t]he deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business." 8A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 2112 (3d ed.); *accord Thomas v. Int'l. Bus. Machs.*, 48 F.3d 478, 483 (10th Cir. 1995) (holding that the deposition of a corporation should be done at its principal place of business).  The rationale for that rule is that party should generally seek to complete discovery efficiently, and that one party should not be permitted to use discovery tools to unduly harass another.

This concern regarding undue harassment becomes heightened when the individual to be deposed is a high-ranking officer of a corporation.  Courts have found that, even when such depositions are proper, they may be limited out due to the inconvenience that testifying imposes on high-ranking officials with demanding schedules.  *See, e.g.*, *Perfect 10, Inc. v. Yandex N.V.*, No. 12-1521, 2013 WL 4028949, at *5 (N.D. Cal. Aug. 6, 2013) (limiting duration of a CEO's deposition out of respect for his schedule); *In re Outside Wall Tire Litig*, 267 F.R.D. 466, (E.D. Va. 2010) ("[C]ourts have generally recognized a presumption that Rule … 30(b)(6) depositions of a foreign defendant corporation's officers or managing agents should be taken at the corporation's principal place of business.").  In fact, this Court has previously required depositions of parties outside the district to be conducted via telephone or video conference when conducting an in-forum proceeding would be burdensome to the deponent.  *See Tardif v. People for the Ethical Treatment of Animals*, No. 2:09-CV-537, 2011 WL 1335825, at *1 (M.D. Fla. Apr. 7, 2011) (requiring deposition of a party to be taken via videoconference where travel to the deposition location would have

imposed a burden on the party); *Duran v. M.R.R. Land Equity, Inc.*, 112 F.R.D. 648, 648 (M.D. Fla. 1986) (authorizing use of telephone depositions).[3]

Here, the Court should exercise that authority to compel the deposition of Messrs. Noubel and Nikopolous to be taken via videoconference, as counsel for all parties had originally contemplated. Messrs. Noubel and Nikopolous are high-level executives with their respective companies and maintain demanding schedules. They have already reserved time on June 25 and 30, 2015, respectively, to participate in all-day videoconference depositions. Now, at the last minute, Defendants are seeking to abandon that understanding, and compel the foreign witnesses to participate in depositions in the United States. That about-face is particularly burdensome for Mr. Noubel, who is not available at all on the day that Defendants have noticed Arval's deposition, and who would be required to set aside the greater part of a week to attend and prepare for a deposition in this District. Moreover, the cost of his flights alone will exceed $4,500—the fare for a last-minute business class ticket from Paris to Jacksonville. Defendants should not be permitted to impose that inconvenience and cost on Messrs. Noubel and Nikopolous. Defendants can take both depositions by videoconference with almost no financial burden to either side, save the cost of the

---

[3] Plaintiffs are aware that Local Rule 3.04(b) establishes a "general policy" that "a non-resident plaintiff may reasonably be deposed at least once in this District." However, the Court may depart from that general principle when supported by the circumstances of a particular case. *See, e.g., LeBlanc v. Unifund CCR Partners, G.P.*, No. 8:06-CV-1216, 2007 WL 2446900, at *3 (M.D. Fla. Aug. 23, 2007) (departing from Local Rule 3.04(b) to allow corporate defendant to be deposed at its principal place of business). Departure is appropriate here, where the deponents are both high-ranking corporate officers based abroad whom Defendants have already agreed to depose via videoconference. Defendants should not be permitted to inconvenience those individuals by insisting on an in-District deposition when it is well-establish that, ordinarily, depositions of corporate officers should be conducted at the corporation's principal place of business. *Thomas*, 48 F.3d at 483.

videoconferencing services, which Plaintiffs' counsel is willing to absorb in the interests of cooperation.

Allowing the deponents to appear via videoconference is particularly appropriate for two additional reasons. First, Defendants never opposed videoconference depositions until one (1) week after counsel's original discussion, after they realized that their untimely document requests would result in them not having documentary evidence prior to the close of discovery—and would therefore preclude them from obtaining documents from Element and Arval in advance of the depositions. Once Defendants identified the oversight in their litigation approach, they realized the only path to success would be to ignore counsel's understanding regarding the videoconference depositions and deliberately notice the depositions for dates when they knew the deponents would not be available. Defendants knew, or should have known, that this action would require an extension of the discovery deadline, and would put them in a better position to take the depositions armed with Plaintiffs' documents. The Court should not permit Defendants to engage in this type of discovery manipulation, especially when it directly prejudices the Plaintiffs, and inconveniences the relevant witnesses, who have already made arrangements to testify on alternate dates.

Second, Defendants have displayed a pattern throughout this litigation of entering—and then rescinding—agreements. For example, in August 2014, the parties reached a settlement agreement that would have completely resolved this matter. *See* Email from William Bartow to Mark Alexander (Aug. 15, 2014), attached as <u>Exhibit E</u>. But, when Defendants were asked to execute the agreement, they responded that, although they were

"previously willing to concede the demands made [with regard to the settlement], [they are] no longer willing to make those concessions." *See* Email from Mark Alexander to William Bartow (Aug. 25, 2014), attached as <u>Exhibit F</u>. Defendants then took a similar approach to a stipulated protective order governing production of documents in this matter. In October 2014, Defendants circulated a proposed order. Then, in early June 2015, in preparation to produce documents in response to Defendants' requests, Plaintiffs made non-substantive revisions to that proposed order and requested that Defendants sign it. *See* Email from Terry Smith to Mark Warzecha (June 3, 2015), attached as <u>Exhibit G</u>. Defendants, however, replied that they "are not inclined to enter into a protective order at this time," even though the order was one that they themselves proposed. *See* Email from Mark Warzecha to Terry Smith (June 10, 2015), attached as <u>Exhibit H</u>.[4]

In sum, Defendants have engaged in a pattern of bait-and-switch, which evidence an attempt to litigate this case in bad faith. The Court should not permit Defendants to continue to engage in these attempts to harass Element, Arval, and their respective officers.

## III. CONCLUSION

Accordingly, Plaintiffs request that the Court quash the deposition notices, and enter an order compelling Defendants to take the noticed depositions of Plaintiffs' corporate designees via videoconference on the specific dates when the corporate representatives are available, particularly, June 25th (Mssr. Noubel) and June 30th (Mssr. Nikopoulos).

---

[4] Defendants' strategy of bait-and-switch, which is clearly aimed at forcing Plaintiffs to needlessly invest time and money is also demonstrated by Defendants' now withdrawn Motion to Transfer Venue (Doc. 29). Plaintiffs were forced to research, draft, and file an Opposition Brief (Doc. 44 and Exhibits 44-1 to 44-6) in response yet Defendants simply withdrew their own motion for no apparent reason at a later date. Motion to Withdraw (Doc. 87).

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 3.01(g), the undersigned certifies that he conferred with counsel for Defendants regarding the relief sought in this motion, and that Defendants have advised that they do not concur in that request for relief.

Dated: June 11, 2015

Respectfully submitted,

**DLA PIPER LLP (US)**

/s/ *William L. Bartow*
William L. Bartow (Trial Counsel)
(*admitted pro hac vice*)
Robert W. Smith, III
(*admitted pro hac vice*)
DLA Piper LLP (US)
1650 Market St., Suite 4900
Philadelphia, PA 19103
Telephone: (215) 656-3300
Facsimile: (215) 656-3301
Email: william.bartow@dlapiper.com
Email: terry.smith@dlapiper.com

Jeremy T. Elman
Fla. Bar No. 37448
DLA Piper LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8514
Facsimile: (305) 503-7551
Email: jeremy.elman@dlapiper.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will automatically send e-mail notifications to all attorneys presently of record, and which will permit viewing and downloading of same from the ECF system.

/s/ William L. Bartow
William L. Bartow (Trial Counsel)
(*admitted pro hac vice*)
DLA Piper LLP (US)
1650 Market St., Suite 4900
Philadelphia, PA 19103
Telephone: (215) 656-3300
Facsimile: (215) 656-3301
Email: william.bartow@dlapiper.com